UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHN HOWARD MORGAN,

     Petitioner,     Case No. 2:22-cv-167

v.            Honorable Paul L. Maloney

KRISTOPHER TASKILA,

     Respondent.

_____/

## **OPINION**

   This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that the district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

**I.      Procedural history**

Petitioner John Howard Morgan is incarcerated with the Michigan Department of Corrections at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. On April 25, 2019, following a bench trial in the Kalamazoo County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. On May 20, 2019, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 20 to 30 years for the CSC-II conviction and 25 to 50 years for the CSC-I convictions.

Petitioner directly appealed his convictions to the Michigan Court of Appeals. He raised two issues in a brief filed with the assistance of counsel—the issues raised herein as habeas grounds I and II—and two issues in a *pro per* supplemental brief—the issues raised herein as habeas grounds III and IV. By opinion issued December 17, 2020, the court of appeals denied relief and affirmed the trial court. *People v. Morgan*, No. 349165, 2020 WL 7414169 (Mich. Ct. App. Dec. 17, 2020).

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court raising the same four issues. (Pet., ECF No. 1, PageID.3–4.) By order entered October 8, 2021, the Michigan Supreme Court denied leave to appeal. *People v. Morgan*, 964 N.W.2d 581 (Mich. 2021).

2

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.4.) Instead, on August 15, 2022, he timely filed his habeas corpus petition raising the same four issues he raised in the state appellate courts:

I.      The trial court abused its discretion in refusing to appoint substitute counsel for Petitioner, where there was good cause to do so, thus violating Petitioner's Sixth Amendment right to counsel.

II.     Petitioner's convictions must be vacated due to insufficiency of the evidence that defendant committed acts of sexual penetration or sexual contact with the then-minor complainant. US Const. Am XIV, Const 1963 Art 1 § 17.

III.    Petitioner was denied d[u]e process and a fair trial by an impartial tribunal where the trial court was aware that he had taken and failed a polygraph under Mich. Comp. Laws § 776.21(5), and then acted as the trier of fact [in] a non-jury trial.

IV.     Trial counsel was ineffective for holding the trial court to a different legal standard than a juror and advising defendant that the trial court could be impartial despite his knowledge that defendant had fai[l]ed a polygraph where if this information was know to a juror and discovered during voir dire the juror would have been removed for cause.

(Pet., ECF No. 1, PageID.6–10.)

## II.    Pending Motions

### A.    Application for leave to proceed *in forma pauperis*

Petitioner has requested leave of court to proceed *in forma pauperis* (ECF No. 2) under 28 U.S.C. § 1915(a)(1) and has filed an affidavit of indigence. The filing fee for a habeas corpus action is $5.00. 28 U.S.C. § 1914(a). The Court should only grant leave to proceed *in forma pauperis* when it reasonably appears that paying the cost of this filing fee would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988). It is not unreasonable to

require a prisoner to devote a small portion of his discretionary funds to defray a fraction of the costs of his litigation. *See Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 267 (7th Cir. 1987).

Petitioner has filed a trust account statement, which shows that over the past six months Petitioner has had an average monthly deposit of $177.09. At the time of filing his petition, Petitioner had a spendable balance of $59.67. Petitioner's financial documents indicate that he has sufficient resources to pay the $5.00 filing fee. Therefore, Petitioner is not entitled to proceed *in forma pauperis* in this action. His application will be denied. Petitioner has 28 days from the date of entry of this order to pay the $5.00 filing fee.

### B.    Motion for an evidentiary hearing

Petitioner moves the Court to conduct an evidentiary hearing. (ECF No. 4.) Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. An evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the statute:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he

4

does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, __ F.4th __, 2022 WL 4363970, at *20 (6th Cir. Sept. 21, 2022).

Petitioner, likewise, fails to demonstrate any of the exceptional circumstances that would warrant an evidentiary hearing. He does not rely on a new and previously unavailable rule of constitutional law nor does he rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. And, although he contends that it was factually impossible for him to have committed the crimes of which he was convicted, he has failed to identify any clear and convincing evidence to support that claim. *See infra* Part IV.B. Therefore, the Court will deny Petitioner's motion for an evidentiary hearing.

### C.     Motion to appoint counsel

Petitioner also asks the court to appoint counsel. (ECF No. 3.) Indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. Rule 8(c), Rules Governing Section 2254 Cases.

The Court has considered the complexity of the issues and the procedural posture of the case. At this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position. Petitioner's motion for a court-appointed attorney will therefore be denied.

### III.    Habeas Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

6

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV. Discussion

### A. Substitute counsel

Petitioner contends that he was constitutionally entitled to have his counsel replaced immediately before trial because of a breakdown in his relationship with appointed counsel. On the day before trial was scheduled to begin, Petitioner informed the trial court that he wanted to fire his appointed counsel because counsel had not consulted with Petitioner, had not obtained discovery, and had not helped to prepare a defense. (Pet'r's Br., ECF No. 1, PageID.29.) Instead, according to Petitioner, counsel had only tried to convince Petitioner to tender a plea. (*Id*.) The trial court denied substitution of counsel and did not permit counsel to withdraw.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const., Amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473

F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

The decision regarding this type of motion traditionally lies within the discretion of the trial judge, and not every denial violates due process, even if the party fails to offer evidence or is compelled to defend without counsel. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Thus, "[d]enial of a continuance to secure counsel rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Murray v. Slappy*, 461 U.S. 1, 11–12 (1983) (internal quotation marks omitted). There are no "mechanical tests" for deciding when the denial is so arbitrary as to violate due process; rather, the Court must look to the circumstances of the case, particularly in the reasons presented to the trial judge at the time the request is denied. *Ungar*, 376 U.S. at 589. "Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show

that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003); *see also Landrum v. Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010). In addition, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997) (internal quotation marks and citation omitted). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." *Powell*, 332 F.3d at 396.

Recognizing this "wide latitude in balancing," *Gonzalez-Lopez*, 548 U.S. at 152, the Supreme Court has concluded that, to warrant a substitution of counsel during trial, the defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with the attorney . . . ." *United States v. Sullivan*, "431 F3d 976, 979–80 (6th Cir. 2005) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)). The Supreme Court has recognized that "courts addressing substitution motions in both capital and non-capital cases routinely consider issues of timeliness." *Martel v. Clair*, 565 U.S. 648, 662 (2012). And, the Sixth Circuit, when reviewing a trial court's denial of a motion to substitute counsel, considers timeliness as one of four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009)).

*Gonzalez-Lopez* states clearly that it "is not a case about a court's power to . . . make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."

10

*Gonzalez-Lopez*, 548 U.S. at 152. Petitioner has not and cannot cite any Supreme Court authority holding that a trial court's discretionary denial of a request for new counsel on the eve or day of trial violates Petitioner's constitutional right to counsel of his choice.[1]

When "'the granting of the defendant's request [to substitute counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008). The more general the rule, and the broader the discretion afforded to the trial court, "'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

It is important to keep in mind that the standard against which the trial court's decision is to be measured is "clearly established federal law," not state law. Michigan's Constitution also guarantees that in "every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ." Mich. Const. 1963, art. 1, § 20.[2] Even though the Michigan Supreme Court has concluded that a defendant's right to counsel under the state constitution is no greater than the rights afforded under the Sixth Amendment, *People v. Reichenbach*, 587 N.W.2d 1, 5 (Mich. 1998), it is not the state courts' pronouncements regarding the scope of the right that provide the relevant standard. Nonetheless, Petitioner's argument regarding this issue cites only state court authorities: *People v. Akins*, 675 N.W.2d 863 (Mich. Ct.

---

[1] Indeed, the Sixth Circuit Court of Appeals has routinely indicated that the denial of such a motion on the day of trial is appropriate on timeliness grounds. *See, e.g.*, *Gilkey v. Burton*, No. 18-1760, 2019 WL 2970841, at *3 (6th Cir. Mar. 22, 2019); *McGhee v. MacLaren*, No. 17-1708, 2018 WL 3120798, at *2 (6th Cir. Jan. 19, 2018); *Mullins v. McKee*, No. 17-1845, 2018 WL 510134, at *2 (6th Cir. Jan. 3, 2018); *Nelson v. Jackson*, No. 16-2623, 2017 WL 5624278, at *3 (6th Cir. Jul. 17, 2017); *United States v. Jackson*, 662 F. App'x 416, 422–23 (6th Cir. 2016).

[2] The state also guarantees that right by statute, Mich. Comp. Laws § 763.1 (On the trial of every . . . criminal accusation, the party accused shall be allowed to be heard by counsel . . . ."), and it is protected from an unknowing waiver by court rule, Mich. Ct. R. 6.005.

App. 2003); *People v. Williams*, 194 N.W.2d 337 (Mich. 1972); *People v. Bass*, 279 N.W.2d 551 (Mich. Ct. App. 1979); and *People v. Wilson*, 204 N.W.2d 269 (Mich. Ct. App. 1972). (*See* Pet'r's Br., ECF No. 1, PageID.28–33.) Petitioner must show that the trial court's resolution runs afoul of clearly established federal law, not state case authority, to prevail.

The Michigan Court of Appeals looked to state authorities when rejecting Petitioner's claim:

> "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v. Traylor*, 245 Mich. App. 460, 462; 628 N.W.2d 120 (2001). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v. Douglas*, 496 Mich. 557, 565; 852 N.W.2d 587 (2014) (quotation marks and citation omitted).

> "'An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced.'" *People v. McFall*, 309 Mich. App. 377, 383; 873 N.W.2d 112 (2015), quoting *Traylor*, 245 Mich. App. at 462. A defendant who requests substitution of counsel must make a "showing of good cause," and the substitution must "not unreasonably disrupt the judicial process." *McFall*, 309 Mich. App. at 383. "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *Id.* (quotation marks and citations omitted). The fact that "a defendant lacks confidence in his or her attorney, unsupported by substantial reason, does not amount to adequate cause." *Id.* In addition, "a defendant's general unhappiness with counsel's representation is insufficient." *Id.*

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v. Akins*, 259 Mich. App. 545, 557; 675 N.W.2d 863 (2003) (quotation marks and citation omitted).]

> In this case, defendant sought to replace his second appointed attorney the day before trial was scheduled to begin. Defense counsel sought to withdraw,

stating that defendant and his family were no longer cooperative. The trial court asked defendant to explain his concerns regarding defense counsel. Defendant stated that counsel was supposed to file a motion to suppress and obtain discovery. Defense counsel had not gone over the case with defendant, and defendant did not feel confident with his representation. Defendant asserted that his counsel advised him to agree to a plea deal; however, defendant could show that he was incarcerated during the offense. Defendant also complained that he had not yet obtained a DVD recording of the victim's police interview. However, defense counsel explained that he was ready to proceed to trial. The prosecution provided the DVD to the defense, and defense counsel stated that it would be reviewed and possibly be used for impeachment.

Considering the evidence present in the record, the trial court did not abuse its discretion by denying defendant's request for substitute counsel. Defendant contends that the trial court failed to specifically address the factors provided in *Akins*. However, even if the trial court did not specifically refer to *Akins* or explain that it was considering specific factors, the trial court asked defendant for an explanation for his request, concluded that he had not shown good cause to substitute his current counsel, determined that defendant was merely attempting to delay trial, and explained that defendant was required to show that the failure to call or investigate witnesses resulted in prejudice.

Moreover, defendant has not shown that the trial court erred by rejecting his request. In this case, defendant asserted a constitutional right, his right to retain his counsel of choice. See *id*. However, defendant failed to establish that he had a legitimate reason for asking for substitute counsel. See *id*. Defense counsel stated that he was ready to proceed to trial. The DVD had been provided to the defense and was reviewed. This was also defendant's second request for substitute counsel. He made similar complaints concerning his first attorney, and this second request was made one day before trial. Moreover, defense counsel used the DVD to refresh the victim's memory regarding statements that she had made in the police interview. On appeal, defendant does not identify what other preparation defense counsel should have competed. Finally, at the hearing at which defendant waived his right to a jury trial, defense counsel informed the trial court that the two were proceeding forward in a cooperative manner and defendant agreed. Even if defendant asserted a legitimate right, he failed to establish a legitimate concern regarding his counsel's performance, did not explain why he waited until the day before trial to make his second substitution request, and has not shown that he suffered any prejudice as a result of the trial court's decision. *See id*. As a result, the trial court did not abuse its discretion in denying defendant's request for substitute counsel. *See Traylor*, 245 Mich. App. at 462.

*People v. Morgan*, 2020 WL 7414169, at *1–2 (alteration in original).

To the extent the court of appeals resolved any of these issues as a matter of state law, with regard to the state constitutional, statutory, or rule guarantees of counsel's assistance, that

resolution binds this Court. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.

The appellate court's determination that the trial court's denial of substitution was consistent with the state guarantees of assistance by counsel conclusively resolves the issue. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' determination of state law is axiomatically correct.

Moreover, Petitioner's claim that the state courts' determinations were inconsistent with state court decisions regarding the *federal* guarantee of effective assistance of counsel, even if the claim were true, does not warrant habeas relief. Those determinations must be inconsistent with law clearly established by the United States Supreme Court—not federal courts of appeal or district courts, and certainly not state courts—before habeas relief is available. Therefore, Petitioner is plainly not entitled to habeas relief because he does not identify a single United States Supreme Court case with which the state courts' determinations here are inconsistent or to which the state court's determinations are contrary.

Finally, in light of the broad discretion afforded courts when balancing the competing interests at stake when a defendant moves for substitution on the eve of trial, the Court finds that the state court's denial of substitution in Petitioner's case was neither contrary to, nor an unreasonable application of clearly established federal law. In short, Petitioner is not entitled to habeas relief on this claim.

### B.      Insufficient evidence

Petitioner next argues that the evidence against him was insufficient. He claims that he and the victim did not live in the home(s) where the victim insisted the abuse had occurred at the time the abuse purportedly occurred. (Pet'r's Br., ECF No. 1, PageID.37.) According to Petitioner, the victim's testimony does not cleanly correspond with the brief period of time that he was out of prison—his incarceration is his alibi. (*Id.*, PageID.40–41.) Petitioner contends that the victim's denial of sexual activity at the time and the failure of trained medical staff to note any "red flags" of such activity at the time also call into question the victim's credibility. (*Id.*, PageID.38–39.)

The Michigan Court of Appeals evaluated Petitioner's challenge against the following standard:

> "Generally, [this Court] reviews a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Wilkens*, 267 Mich. App. 728, 738; 705 N.W.2d 728 (2005) (quotation marks and citation omitted). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *Id.* "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *Id.*

*People v. Morgan*, 2020 WL 7414169, at *3 (alteration in original). Although the appellate court relied on state authority for the relevant standard, the standard applied is functionally identical to the standard set forth in clearly established federal law.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

The court of appeals plainly applied the correct standard to evaluate Petitioner's sufficiency claim. The only question that remains is whether the court applied the standard reasonably. The court applied the standard as follows:

> On appeal, defendant does not argue that the prosecution failed to prove any of the elements of the charged offenses. Instead, he contends that the abuse could not have occurred as the victim alleged because defendant never lived within the same household as the victim.

> However, the victim testified that defendant lived with her family at the Alamo Avenue residence (defendant's mother's home) and on Elgin Street. This testimony was corroborated by the victim's mother. Although the victim's mother was unsure with regard to dates, she testified that her family lived with defendant's mother both with defendant and without defendant. Moreover, the detective testified that officers responded to defendant's address on Alamo Avenue for a domestic violence dispute involving the victim's mother in July 2009. Defendant's parole paperwork showed that he lived on Elgin Street in 2010. Defendant's mother contradicted some of this testimony. She stated that defendant lived with her when he was released from prison and that the victim's family did not move into her home until after defendant was back in prison. The trial court did not find this testimony credible. As the finder of fact, the trial court was tasked with determining the

16

credibility of witnesses. See *People v. Solloway*, 316 Mich. App. 174, 180; 891 N.W.2d 255 (2016) (stating that "[i]n determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses"). Accordingly, there was sufficient testimony to support the allegation that defendant abused the victim while they were living together on Alamo Street and Elgin Street.

The parties stipulated to the dates in which defendant was incarcerated. As a result, the abuse was required to have occurred between February 2009 and April 2010. Although the victim was unsure of the exact dates on which the incidences occurred, the evidence showed that it was possible that defendant abused the victim at his mother's home and at a residence on Elgin Street in 2009 and 2010. *See People v. Naugle*, 152 Mich. App. 227, 234; 393 N.W.2d 592 (1986) (stating that "[w]here the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, we would be disinclined to hold that an information or bill of particulars was deficient for failure to pinpoint a specific date").

Defendant also argues that the victim alleged that the abuse occurred over a five-year period, which was impossible considering the dates that defendant was incarcerated. However, that statement comes from the recorded police interview. According to the trial transcript, during the victim's recorded interview with police, the detective stated that the abuse occurred over one year and then the other officer present said that the abuse occurred over a period of five years and the victim responded "yeah." The victim testified at the preliminary hearing that the abuse occurred over the course of one year. She explained at trial that she did not go over a specific timeline with the police. She had to do so with her mother because the abuse happened so long ago. The trial court stated that it would consider this information with all the other evidence. We do not believe that the victim's agreement with a statement made by a police officer during an interview negates her trial testimony regarding events that occurred almost 10 years prior when she was approximately 9 or 10 years old.

Finally, defendant contends that the fact that the victim did not disclose any abuse to medical staff when she went to the hospital in March 2010, showed that the abuse did not occur. However, the victim's failing to disclose abuse and the attending medical staff's failure to discover abuse is not dispositive. *See People v. Kowalski*, 492 Mich. 106, 123; 821 N.W.2d 14 (2012) (explaining that "victims of child sexual abuse sometimes exhibit behavior, such as delayed reporting of abuse or retraction of accusations, that psychologists understand to be common among abuse victims but that jurors might interpret as being inconsistent with abuse"). Ultimately, all the evidence and alleged discrepancies were presented to the trial court to evaluate as the trier of fact. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's convictions for CSC-I and CSC-II. *See Wilkens*, 267 Mich. App. at 738.

*People v. Morgan*, 2020 WL 7414169, at *3–4.

17

Because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Petitioner has not cleared that hurdle.

Certainly, if *Jackson* required the Court to assess the sufficiency of the evidence by viewing it in a light that favored Petitioner, Petitioner's argument might call into question the court of appeals' analysis. But that is not what *Jackson* calls for. Indeed, Petitioner's argument turns the *Jackson* standard on its head. It is the fact-finder's province to determine credibility—the credibility of the victim's account and the credibility of Petitioner's account as revealed through his out-of-court statements and the testimony of his witnesses. Those credibility determinations, however, impact the weight of the evidence, not its sufficiency. Where the accounts of the victim and Petitioner are in conflict, it is the fact-finder's province to resolve that conflict and determine the facts by reasonable inference.

Petitioner does not directly challenge the court of appeals' thorough review of the evidence and reasonable inferences to be drawn from the evidence. "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

18

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable. *Jackson* holds that it is the fact-finder's province to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The *Coleman* Court described a reasonable inference as an inference that a rational factfinder could make from the facts. The inferences identified by the court of appeals rationally flow from the underlying facts. The inferences are not compelled by those facts. The inferences may not even be more likely than not; they are simply rational. *Id*. at 656. Nothing more is required.

Petitioner has not shown that the inferences identified by the court of appeals are irrational. Instead, he simply invites this Court to make contrary inferences—inferences that favor him. That is not permitted on habeas review.

Petitioner has failed to demonstrate that the court of appeals' resolution of his sufficiency claim is contrary to, or an unreasonable application of, *Jackson*. Therefore, he is not entitled to habeas relief on his sufficiency claim.

### C.    Impartiality and the polygraph

Petitioner next claims that the trial judge was unfairly biased against Petitioner because the judge knew that Petitioner had failed a polygraph test. The court of appeals rejected Petitioner's claim:

> In this case, the fact that the trial court was aware that defendant failed a polygraph examination was discussed at length at the hearing at which defendant waived his right to a jury trial. However, all parties agreed that the trial court could remain impartial. Defendant never argued that the trial court should recuse itself. As a result, this claim is not preserved for appeal. *See People v. Metamora Water Serv., Inc.*, 276 Mich. App. 376, 382; 741 N.W.2d 61 (2007). Unpreserved claims of error are reviewed for plain error affecting defendant's substantial rights. *People v. Carines*, 460 Mich. 750, 762–764; 597 N.W.2d 130 (1999). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious,

3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

A criminal defendant is guaranteed the right to trial by an impartial jury. See Const. 1963, art. 1, § 20. According to MCL 763.4,

> [i]n any case where a defendant waives his right to a trial by jury and elects to be tried by the judge of such court . . . any judge of the court in which said cause is pending shall have jurisdiction to proceed with the trial of said cause, and shall proceed to hear, try and determine such cause in accordance with the rules and in like manner as if such cause were being tried before a jury.

Pursuant to MCL 776.21(5), "[a] defendant who allegedly has committed a crime under [the criminal sexual conduct statutes] shall be given a polygraph examination or lie detector test if the defendant requests it."

In *People v. Walker*, 24 Mich. App. 360, 361–362; 180 N.W.2d 193 (1970), *aff'd* 385 Mich. 596 (1971), the trial court knew that the defendant had taken and failed a lie detector test and thereafter accepted the defendant's waiver of a jury trial. The record showed "that the trial judge interrogated witnesses prior to trial in the presence of defense counsel and the prosecuting attorney but in the absence of the defendant." *Id*. This Court concluded that such interrogation was proper because the trial court was seeking information in regard to the defendant's motion for a continuance. *Id*. Therefore, there would not have been any error if the case went to a jury trial as was anticipated. *Id*. However, because the trial court later accepted defendant's waiver of a jury trial, this Court explained that it was "satisfied that had a jury voir dire examination disclosed that any prospective juror possessed the information that the trial judge possessed prior to trial, that juror would have been excused by the trial judge for cause." *Id*. at 362. As a result, this Court explained that the trial court should have recused itself from presiding over defendant's trial because it did "not pass the required test of impartiality." *Id*.

The Michigan Supreme Court later clarified the holding in *Walker*, stating that *Walker* was limited to its facts. *People v. Cocuzza*, 413 Mich. 78, 83; 318 N.W.2d 465 (1982). The Supreme Court explained that

> [i]n *Walker* the matter which gave rise to the complaint on appeal concerning disqualification did occur before the jury trial waiver was made. However, the record clearly revealed that the trial judge had developed a bias against the accused which did not comport with the obligation to conduct a fair and impartial trial. [*Id*.[2]]

---

[2] In *Walker*, 24 Mich. App. at 361, the trial court, addressing defense counsel, stated "But I also didn't realize, and maybe you didn't know before you stepped into the

picture, that your client took a lie detector test. Do you know that? And he failed it."

_____

The defendant in *Cocuzza* initially sought to plead guilty to a charge of breaking and entering. *Id*. at 79. The trial court explained the defendant's rights and elicited a factual basis for the charge; however, the defendant changed his mind about pleading guilty and ultimately waived his right to a jury trial. *Id*. at 79–80. The bench trial was conducted by the same judge who heard defendant's guilty plea. *Id*. The defendant never moved to disqualify the judge at any time in the trial court proceedings. *Id*. On appeal, the Supreme Court rejected the defendant's claim of bias, explaining:

> We perceive no evidence of bias on the part of the trial judge in the instant case. It is true that the trial judge had previously heard the defendant proffer a factual basis for the charge of which he was ultimately convicted. However, we decline to impose upon a trial judge the duty to sua sponte raise the question of his disqualification in such circumstances. With full knowledge of the trial judge's prior involvement in this matter, defendant, who was represented by counsel, elected to proceed with a bench trial before that judge. We will not reward the failure to move for disqualification, with assertion of the basis reserved for appellate purposes, by sanctioning a reversal of the defendant's conviction. [*Id*. at 83–84.]

We believe that this case is distinguishable from *Walker* and more analogous to *Cocuzza*. The trial court explained that it was aware that defendant had failed a polygraph examination. However, the trial court elaborated that it did not place much trust in polygraph examinations, that it did not know what questions defendant was asked, and that it had the ability to put the fact aside and its decision would not be affected. The trial court then allowed the parties to place any comments or objections on the record. Defense counsel stated that he informed defendant that the trial court was aware of the polygraph results but that he advised defendant that he trusted that the trial court would ignore that information. Defendant agreed. The trial court advised defendant regarding his rights to a jury trial and accepted defendant's waiver.

Like the defendant in *Cocuzza*, defendant, with full knowledge of the trial court's awareness and representation by counsel, chose to proceed to a bench trial without moving for disqualification in the lower court proceedings. *See id*. at 83–84. Additionally, there is no evidence of bias in this case. The trial court specifically stated that the polygraph results would not affect its decision and those results were not discussed during trial or in the trial court's ruling. As a result, defendant has not shown plain error affecting his substantial rights, *see Carines*,

460 Mich. at 763, and he is not entitled to a reversal of his convictions on the basis of the circumstances in this case. *See Cocuzza*, 413 Mich. at 83–84.

*People v. Morgan*, 2020 WL 7414169, at *5–6 (alteration in original).

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997) (citations omitted). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016) (internal quotation marks omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 579 U.S. at 8. The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997), and the even more generally applicable

presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)." *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[3] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. [563, 583 (1966)]. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).

---

[3] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

The Michigan Court of Appeals rejected Petitioner's bias argument as meritless, but it plainly focused on the issue as a matter of state law, looking to the state constitution, statutes, and authority. For the reasons set forth above, the appellate court's determinations that the trial judge was not disqualified for bias as a matter of state law are binding on this Court.

The fact that the analysis is based on state law does not render the analysis an unreasonable application of, or make it contrary to, clearly established federal law. The circumstances Petitioner describes do not fit clearly within any of the three situations that bear objective indicia of bias. Essentially, Petitioner asks this Court to find that exposing the finder of fact to a polygraph result makes the finder of fact biased or otherwise renders the trial fundamentally unfair. That is simply not the case, at least it is not the case under clearly established federal law.

As the Sixth Circuit Court of Appeals explained in *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005):

> The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. Further, we are aware of no federal court of appeals that has found a due process violation warranting a grant of habeas relief under these facts. Indeed, three circuits have rejected habeas petitioners' claims that testimony about truth testing violated the petitioners' due process rights. Notably, two reached this conclusion under pre-AEDPA de novo review. *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001) (AEDPA deference); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994) (de novo review); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991) (de novo review). While these cases are distinguishable from the present one in important respects, they do not imply that testimony regarding truth testing violates due process. Finding a due process violation here would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests. No Supreme Court precedent demands this result, and the state court's decision therefore was not unreasonable under 28 U.S.C. § 2254(d).

*Maldonado*, 416 F.3d at 477–478 (footnote omitted); *see also Strandberg v. Palmer*, No. 17-1806, 2018 WL 333867, at *1–2 (6th Cir. Jan. 9, 2018) (quoting *Maldonado*); *Johnson v. Burt*, No. 20-1760, 2020 WL 6588631, at *3 (6th Cir. Nov. 9, 2020) (citing *Maldonado*). Although almost two

decades have passed since the *Maldonado* decision, it remains the case that the Supreme Court has never held that reference to a polygraph test renders a trial fundamentally unfair.

Put simply, Petitioner has failed to demonstrate that the state court's decision is contrary to or an unreasonable application of clearly established federal law. He has similarly failed to show that the factual determinations relating to the jury waiver hearing—the facts upon which the state court's decision are based that are presumed to be correct—are unreasonable. Accordingly, Petitioner is not entitled to habeas relief on this issue.

### D.    Ineffective assistance of counsel

Finally, Petitioner claims that his counsel rendered ineffective assistance because counsel failed to move to disqualify the trial judge for bias. The Michigan Court of Appeals rejected the claim:

> Finally, defendant asserts that his counsel was ineffective for failing to inform defendant that the trial court was held to the same standard of impartiality as a jury and for failing to request that the trial court recuse itself from defendant's bench trial. We disagree.

> * * *

> To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin (On Second Remand)*, 242 Mich. App. at 659. "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

> First, defendant does not present any evidence that defense counsel failed to explain that the trial court was subject to the same standards as a jury in regard to impartiality. Second, the trial court explained that it would remain impartial regardless of the polygraph results and defendant agreed. Defense counsel stated that it was defendant's idea to have a bench trial and that, after a discussion, defense counsel believed that defendant was making an informed decision. As a result, defendant has not shown that defense counsel was deficient in this regard. *See id*. Moreover, as discussed earlier in this opinion, defendant has not presented any

evidence of bias to contradict the statements that the trial court made before trial. Accordingly, defendant has not established that any alleged error by defense counsel affected the outcome of the proceedings. *See id*. Therefore, defendant has failed to establish that his counsel was ineffective. *See id*.

*People v. Morgan*, 2020 WL 7414169, at *6–7. Although the state court relied on state authority for the relevant standard, the state authority, *Sabin*, derived the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), the clearly established federal law regarding ineffective assistance of counsel.

In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is

"doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner's ineffective assistance claim fails on both prongs of the *Strickland* test. The Michigan Court of Appeals concluded the polygraph issue did not evidence bias as a matter of state law and, for the reasons set forth above, the polygraph issue does not establish bias under federal law either. Put differently, the issue counsel chose to forego lacked merit. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752. Therefore, the court of appeals' determination that Petitioner's counsel did not render ineffective assistance is neither contrary to, nor an unreasonable application of clearly established law and Petitioner is not entitled to habeas relief on this claim.

## V.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying Petitioner's motions and a certificate of appealability.

Dated:   September 29, 2022          /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge